IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 4376 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Theresa Carter ("Carter"), seeks judicial review of a final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her supplemental security income and Social Security disability insurance benefits. Before the Court is Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(c). For the reasons set forth below, the Court remands the case for further proceedings consistent with this opinion.

### I. Background

A.  **Procedural History**

Theresa Carter applied for supplemental security income ("SSI") on December 19, 2003, and for Social Security disability insurance benefits ("DIB") on May 15, 2004. In both

applications, she requested relief due to an alleged disability that began on November 2, 2002. (R. at 405.) These claims were denied originally and again upon reconsideration by the Social Security Administration ("SSA") on October 15, 2004. Carter then requested a hearing before an Administrative Law Judge ("ALJ"). Carter's initial hearing was held on September 6, 2006. (R. at 460.) The ALJ, Judith Goodie, noted that the record was incomplete and requested that Carter submit to independent psychiatric and medical examinations. (R. at 471-72.) After completing these examinations, Carter appeared before the ALJ again on February 8, 2007. (R. at 399.) The ALJ found that Carter was disabled under Section 12.04 of the SSA's impairment listings. (R. at 16.) However, the ALJ also found that Carter had a substance abuse disorder that was material to her disability, thereby disqualifying her from receiving disability benefits. (R at 16-18.) Carter timely appealed the ALJ's decision to this Court.

### B. Factual History

#### 1. Carter's Background

At the time of her application, Carter was 43 years old. She has completed three years of high school and has held numerous jobs since leaving school. (R. at 407-12.) Beginning in 1993, she worked as a certified nurse's assistant, but she was forced to stop after two years because she experienced hand spasms and was allergic to some of the chemicals that she worked with. (R. at 412, 440.) Carter has also spent time as a seasonal mail sorter, a cashier at a fast food restaurant, a crew leader in a bank, a cashier and then assistant manager of a grocery store, and a receptionist. (R. at 408-412, 440-44.) Carter claims that as of November 2, 2002, the combined effects of her physical and mental health ailments left her unable to work.

2. <u>Medical Evidence</u>

The evidence of record shows that Carter has suffered from a number of ailments throughout her life, including carpal tunnel syndrome ("CTS"), asthma, hypertension, syncope, arthritis, and bipolar disorder. On October 27, 2003, Dr. B. Thomas Jeffcoat examined Carter, who was complaining of numbness and pain in her left hand, and found that she had CTS in her left hand. (R. at 195.) Further testing confirmed this diagnosis, and Carter underwent hand surgery in November 2003. (R. at 188-92.) Over the next three months, Dr. William Meyers periodically examined Carter. (R. at 186-88.) In February 2004, he noted that she was discharged from physical therapy because she had sufficiently increased the strength and use of her hand. (*Id.*)

The record shows that Carter's next major medical treatment was in December 2005 at Jackson Park Hospital, where Carter spent three days being treated for asthma and mental health issues. (R. at 204-10, 420.) Upon her release, her treating physician, Dr. Puppala, referred her to the Chatham Avalon Mental Health Clinic, though she never went for follow-up treatment. (*Id.*) From December 2005 until June 2006, Carter did not receive psychiatric treatment. She did, however, see doctors for other medical treatment. On March 10, 2006, Dr. Komar of Provident Hospital removed Carter's gallbladder after she visited the emergency room complaining of abdominal pain. (R. at 327.) This procedure would have been performed on March 8, but it was postponed for forty-eight hours because Carter tested positive for cocaine. (R. at 320, 327.) Carter subsequently visited Dr. Komar on March 22, March 29, April 12, April 26, May 3, and May 24, 2006. (R. at 311-19.) While the notes from these visits are difficult to read, Carter

seems to have gone in for matters related to her surgery. (*Id.*) It is not clear whether these were routine post-surgical examinations or whether Carter was experiencing complications.

Carter's next treatment for mental health issues came in June 2006, when she visited Dr. Daugherty, a psychiatrist.[1] (R. at 362-63.) At her initial appointment with Dr. Daugherty, Carter denied having a history of drug or alcohol abuse. (R. at 363.) At her next appointment, on July 12, Carter told the doctor that she had fallen off of a porch a week earlier because she was weak and dizzy. (R. at 360.) Dr. Daugherty referred Carter to the emergency room at Provident Hospital because she reported that she still felt "dizzy" and "off balance." (*Id.*)

From July 12-19, 2006, Carter was treated at Provident Hospital with Dr. Maliakkal overseeing her care. (R. at 267-307.) Most of the hospital notes are illegible, but Dr. Maliakkal's discharge notice dated July 19, 2006, indicates that Carter suffered from syncope, hypertension, and a urinary tract infection, and that she received counseling for alcohol and substance abuse. (R. at 267.) A toxicology test performed at the hospital on July 12 detected the presence of cocaine in Carter's urine. (R. at 287.) Dr. Maliakkal noted that Carter had a history of depression and that she was to follow up with Dr. Daugherty. (R. at 267.)

On December 5, 2006, Dr. Daugherty completed a Mental Impairment Questionnaire furnished by Carter's attorney in which he indicated that Carter suffered from bipolar disorder, asthma, hypertension, and CTS. (R. at 371.) He noted that Carter's impairments had lasted or could be expected to last at least twelve months. (R. at 373.) Dr. Daugherty's report also indicated that Carter admitted using cocaine in the past but denied using drugs at the present

---

[1] The parties seem to agree that Carter was treated by Dr. Daugherty, although the medical notes they refer to are stamped with the name of Dr. Komar. The signature is illegible. Because the parties are in agreement, the Court assumes that these are indeed the notes of Dr. Daugherty.

-4-

time. (R. at 371.) At the ALJ's request, Carter was also examined by another psychiatrist, Dr. Ana Gil, on September 13, 2006. (R. at 257.) At her examination, Carter denied any history of using alcohol or drugs, and she denied ever having attempted suicide. (R. at 258.) Dr. Gil concluded in her RFC report that Carter had major depression. (R. at 260.) Carter also underwent a physical disability examination by Dr. Hilton Gordon on September 19, 2006. (R. at 247.) He diagnosed Carter with asthma, probable residual CTS, a history of hypertension, and depression. (R. at 249.) Dr. Gordon indicated in his RFC report that Carter could lift 20 pounds occasionally, stand or walk for less than two hours in an eight-hour workday, sit without limitation, and reach, handle, feel, and use her fingers without limitation. (R. at 253-255.) He also found that Carter's range of motion was normal in all of her joints, that her dexterity was normal, and that her fist and grip strength were 5/5 in both hands (the highest possible score). (R. at 250.)

### C. Hearing Testimony

At the hearing on February 8, 2007, Carter testified that she lives with her mother and requires assistance to carry out the essential tasks of living. (R. at 414.) She spends her days on the second floor and only ventures downstairs when necessary, about once a week. (R. at 429.) Carter's sister and daughter visit to help with cleaning, washing, cooking, and other daily tasks. (R. at 414.) Carter claimed that she never used drugs prior to 2002, though she admitted to using drugs and alcohol heavily during the summer of 2006 because she was trying to commit suicide. (R. at 417, 437-38.) She testified that she tried to kill herself again in September 2006 with

medication and alcohol. (R. at 418.) Carter claimed that the last time she used drugs and alcohol was in December 2006. (R. at 417.)

Vocational expert ("VE") Cheryl Hoiseth also testified at Carter's hearing. (R. at 444-53.) The ALJ described five hypothetical individuals with varying functional capacities and asked the VE to calculate how many jobs in the Chicago area each of them would be able to perform. The first hypothetical person had the same age and background as Carter and was able to lift and carry ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for up to six hours in an eight- hour day; push and pull ten pounds frequently and twenty pounds occasionally; perform simple, routine, repetitive tasks with occasional changes in work routine and setting; and occasionally interact with co-workers and the general public. (R. at 446-47.) This hypothetical person also had to avoid exposure to concentrated airborne irritants, extreme heat and cold, hazardous machines, and unprotected heights. (R. at 447.) The VE said that such a person would not be able to perform any of Carter's past work but could perform one of the 10,800 "cleaner" jobs, 12,000 "assembler" jobs, and 10,000 "hand packager" jobs existing in the regional economy. (R. at 447-48.)

The second hypothetical individual had the same functional capacity except that the ALJ added as a restriction only "occasional use of the left upper extremity for fingering and feeling." (R. at 448.) The VE testified that this individual could only perform the "cleaner" position. (*Id.*) The third hypothetical person had the same restrictions as the second except that the ALJ added a requirement that any job have a "sit/stand option" (which the VE defined as allowing the worker to sit for a short period of time). (R. at 449.) The VE said that this person could also perform only the "cleaner" position. (*Id.*) The fourth hypothetical individual had the same functional

capacity as the second, but without the "sit/stand option." (*Id.*) This person could not perform any jobs. (*Id.*) The fifth person had the same restrictions as the fourth except that she had good use of both hands. (R. at 449-50.) The VE said that this person could perform one of the 2,000 "assembler" or 1,000 "hand packager" positions existing in the regional economy. (R. at 450.)

### D.   The ALJ's Opinion

The ALJ found that Carter's impairments included hypertension, major depression, alcohol abuse, cocaine use, degenerative changes to the cervical spine, asthma, mild left ulnar cubital tunnel syndrome, and her history of gallbladder and carpal tunnel surgeries. (R. at 15.) In addition, she found that Carter's impairments rendered her disabled under Section 12.04 of the SSA's impairment listings. (R. at 16.) However, the ALJ also found that substance abuse was material to Carter's disability, such that if Carter ceased using substances, her remaining impairments would not prohibit her from working. (R. at 16-17.) Therefore, the ALJ found that Carter was not eligible for disability benefits.

In finding that Carter's substance abuse was material to her disability, the ALJ determined that the medical opinions in the record evaluating Carter's mental impairments could not be fully credited. The ALJ noted that on June 14, 2006, Carter told Dr. Daugherty that she did not have a history of abusing substances, and that Dr. Daugherty's December 2006 opinion said that Carter admitted using cocaine periodically, but not presently. (R. at 16-17.) The ALJ observed that Carter neglected to tell Dr. Daugherty about her positive drug tests at Provident Hospital in March and July of 2006. (R. at 17.) She also failed to mention that she drank heavily in the summer of 2006, tried to commit suicide in September 2006 using medications and alcohol, and

used cocaine and alcohol until at least December 2006. (*Id.*) Because Dr. Daugherty based his December 5, 2006, opinion on inaccurate information about Carter's substance abuse, the ALJ concluded that the doctor's opinion was only an accurate depiction of Carter's condition when she was using drugs and alcohol. (*Id.*) Similarly, because Carter told Dr. Gil that she did not use drugs and alcohol, the ALJ found that Dr. Gil's opinion was only an accurate description of Carter's condition when she was using drugs and alcohol. (*Id.*)

The ALJ also found that Carter would not be disabled if she stopped abusing drugs. (R. at 16-18.) Carter had worked as a certified nurse's assistant, fast food worker, cashier, mail sorter, and receptionist prior to 2002, and in her last year of employment she earned over $17,000. (R. at 17.) Carter testified that she did not use drugs or alcohol prior to 2002. (*Id.*) From these facts, the ALJ concluded that Carter was not disabled during periods of sobriety. (R. at 19.) The ALJ recognized that during periods of sobriety, Carter's remaining symptoms would be restricting. However, the ALJ found that "[Carter's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*) For example, Carter complained that her hands hurt and that she could not use them fully, but Dr. Gordon's September 2006 examination indicated that Carter had full use of both hands. (*Id.*)

In considering Carter's physical RFC, the ALJ relied on Dr. Gordon's evaluation and found that Carter could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for about two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (R. at 18.) While she was not able to perform any of her past relevant work, the ALJ found that she could perform one of the 2,000 "assembler" positions or 1,000 "hand packager" jobs existing in the Chicago area. (R. at 21.)

## II. Discussion

### A. Standard of Review

The Court's role is to determine whether the record provides substantial evidence to support the ALJ's ruling. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 388 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and it must be more than a "mere scintilla of proof." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). This Court may not reweigh the evidence or substitute its own judgment for that of the ALJ. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). Instead, it must critically examine the evidence and reverse the ALJ's decision only if it lacks either evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### B. The Five-Step Inquiry for Benefits Determination

A determination of disability is made according to a five-step inquiry described in the Social Security regulations. 20 C.F.R. § 416.920(a)-(g). The ALJ must sequentially consider:

> (1) Whether the applicant currently performs substantial gainful activity. If so, she is not disabled.
>
> (2) Whether the impairment is severe and of long enough duration. If not, the applicant is not disabled.
>
> (3) Whether the impairment meets or equals an impairment listed in the regulations as conclusively disabling. If so, the applicant is disabled.
>
> (4) Whether the applicant is able to do any of her past work. If so, then she is not disabled.

> (5) Whether the applicant can perform any other work. If so, then she is not disabled.

*Id.* If the ALJ does not find the applicant to be disabled by step three, then at step four she must determine the applicant's residual functional capacity in order to ascertain whether the applicant can perform any of her past work. 20 C.F.R. § 416.920(e). This determination must be based on all relevant evidence, medical or otherwise. *Id.* While the applicant has the burden of proving a disability for the first four steps, the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

A claimant will not be eligible for DIB if she suffers from drug addiction or alcoholism and such substance abuse is material to her disability. 20 C.F.R. § 404.1535. Substance abuse is material to an individual's disability when the individual would no longer be disabled if she stopped abusing substances. *Id.* To determine materiality, the ALJ considers which of the complainant's physical and mental limitations would remain if the individual stopped using drugs and alcohol. *Id.* Then she decides whether these limitations alone would still be disabling under the five-step procedure outlined above. *Id.* If the ALJ determines that these limitations would be disabling even if the claimant stopped abusing substances, then the substance abuse is not material and the claimant qualifies for DIB. *Id.* If the remaining limitations would not be disabling, then the substance abuse is material and the claimant cannot receive DIB. *Id.*

### C. Analysis

Carter challenges the ALJ's decision on three grounds. First, Carter contends that the ALJ did not adequately articulate her reasons for excluding Carter's alleged hand impairments

from her RFC determination. Next, Carter argues that the ALJ made several factual determinations that were not supported by substantial evidence. Finally, she claims that the ALJ inappropriately "played doctor" in determining that substance abuse was material to Carter's disability. The Court considers these arguments in turn.

1. The ALJ Sufficiently Articulated Her Reasoning.

Carter argues that the ALJ failed to properly articulate the reasoning for her decision not to incorporate Carter's alleged hand-use limitation into her RFC determination. A claimant's Residual Functional Capacity is an administrative evaluation of what work-related activities an individual can engage in despite her limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In determining a claimant's RFC, as with all factual determinations, an ALJ must articulate some minimal level of evidentiary analysis, *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994), in order to build a "logical bridge from the evidence to [her] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotes omitted). This is important because it enables a reviewing court to confirm that the ALJ based her opinion on substantial evidence. Furthermore, "[a]n ALJ may not simply select and discuss only that evidence which favors his ultimate conclusion. Rather, an ALJ's decision must be based upon consideration of all the relevant evidence." *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). However, the ALJ need not provide a detailed analysis of every piece of evidence. *Zurawski*, 245 F.3d at 889.

Carter's argument fails because the ALJ fulfilled her duty to provide a "glimpse into [her] reasoning," *Zurawski*, 245 F.3d at 889, by articulating at least a minimal level of evidentiary analysis to justify her decision not to incorporate Carter's alleged hand impairment into her RFC.

In her "Finding of Fact" number 7, the ALJ discussed Carter's examination by Dr. Gordon in September 2006. (R. at 19.) Specifically, the ALJ pointed out that "[a]lthough the claimant complains of pain and limitations in both hands, the claimant had full use of both hands when examined." (*Id.*) The ALJ noted that Carter's joints had a full range of motion, that her grip and fist strength were 5/5 bilaterally, and that her dexterity was normal. (*Id.*) She concluded by stating that she was relying on Dr. Gordon's consultative examination in determining Carter's physical impairments. (*Id.*) This discussion articulates the factual basis for the ALJ's findings—the discrepancy between Carter's self-reported impairment and the physician's report—and links them to the ALJ's decision not to incorporate the alleged hand impairments into Carter's RFC. Therefore, the ALJ sufficiently articulated the basis for her decision regarding Carter's hand impairment.

2. The ALJ's Factual Findings Were Supported by Substantial Evidence.

Carter claims that the ALJ made two incorrect factual determinations in concluding that the opinions of Dr. Daugherty and Dr. Gil were only an accurate description of Carter's condition when she was abusing substances. First, Carter argues that, contrary to the ALJ's finding, Dr. Gil and Dr. Daugherty were aware of Carter's substance use when they made their diagnoses. Carter next argues that the ALJ's decision was based on an erroneous finding that Carter denied drug "use" to Dr. Daugherty; Carter claims that she only denied drug "abuse."

An ALJ's findings of fact will stand so long as they are based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at

401, and the ALJ has articulated some minimal level of evidentiary analysis, *Herron*, 19 F.3d at 333. Carter claims, in a one-sentence argument, that "Dr. Daugherty was aware of plaintiff's substance use when he provided his opinion, undermining the very premise of the ALJ's conclusion." (Pl.'s Mot. 7.) She does not expand on what substance use the doctor was aware of or how this awareness undermined the ALJ's opinion. Carter's argument seems to be that Dr. Daugherty knew about her substance abuse because she admitted to him that she used cocaine "periodically" but not "presently."

Dr. Daugherty's notes do indicate that he was aware of Carter's statement, (R. at 371.), but this does not mean that he was aware of the full extent of Carter's substance abuse. In June 2006, Carter denied to Dr. Daugherty that she had a history of drug and alcohol abuse. (R. at 363.) In December 2006 she said that she was not using drugs "presently." (R. at 371.) However, she tested positive for cocaine on March 10, 2006 and on July 12, 2006. (R. at 287, 320, 327.) She also testified at her hearing that she used drugs and alcohol heavily during the summer of 2006 and that she last used cocaine and alcohol in December 2006. (R. at 437-38.) Based on the medical evidence that Carter tested positive for cocaine in March and July of 2006 and her testimony about using drugs until December 2006, the ALJ reasonably found that Carter misrepresented her drug use to Dr. Daugherty when she told him that she was not presently using drugs.

Because Dr. Daugherty may have based his opinion on Carter's misleading comments, the ALJ's conclusion that his diagnosis might have been different had he known the full extent of Carter's substance abuse was supported by substantial evidence. Therefore, it made sense for the ALJ to rely on Dr. Daugherty's opinion only as a description of Carter's condition while she was

using drugs. The same reasoning applies to Dr. Gil's opinion, which was rendered under similar circumstances. Furthermore, the ALJ adequately articulated her reasoning when she stated that "the conclusions of Dr. Daugherty and Dr. Gil, based on [Carter's] false statements about her past and present use are not a reliable indicator of her mental capacity when she is not using drugs or alcohol." (R. at 17.) Therefore, the Court finds that the ALJ's determination that the opinions of Dr. Daugherty and Dr. Gil only reflected Carter's condition when she was using drugs or alcohol must be upheld under the deferential "substantial evidence" standard of review.

Carter's second argument—that the ALJ made a factual error when she found that Carter denied drug "use" to Dr. Daugherty—is entirely without merit. Carter may be correct that "use" is different from "abuse," but her argument is irrelevant because the ALJ never asserted that Carter denied drug "use." Rather, the ALJ's decision states that at her June 14, 2006, appointment with Dr. Daugherty, the "claimant falsely denied a history of drug and alcohol *abuse*." (R. at 16, emphasis added.) The same language appears in Dr. Daugherty's notes. Because the ALJ never claimed that Carter denied "using" drugs to Dr. Daugherty, Carter's argument has no basis in fact.

3. The ALJ's Decision is based on an Improper Medical Opinion.

Carter argues that the ALJ improperly "played doctor" by independently making decisions that required expert medical evidence. First, Carter claims that the ALJ was not qualified to conclude that Dr. Daugherty's and Dr. Gil's opinions were only an accurate portrayal of Carter's condition when she was abusing substances. Next, she contends that the ALJ improperly determined that Carter's impairments, in the absence of substance abuse, would not prevent her from working.

An ALJ has discretion to weigh evidence, but she "must not succumb to the temptation to play doctor and make [her] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Indeed, when it comes to making medical determinations, "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). The Seventh Circuit has emphasized that when it comes to mental illnesses such as depression, "health professionals, in particular psychiatrists . . . are the experts," *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), as these conditions are "less amenable to concrete diagnostic techniques." *Kuwahara v. Bowen*, 677 F. Supp. 553, 560 (N.D. Ill. 1988).

However, the fact that there is a medical opinion does not necessarily mean that the ALJ must adopt its findings. While a treating physician's opinion receives controlling weight if it is "well supported by medical findings and not inconsistent with other substantial evidence in the record . . . a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon*, 270 F.3d at 1177. Medical findings can be refuted by other evidence, even non-medical evidence. *Wilder*, 64 F.3d at 337. If an ALJ denies an opinion controlling weight, she can still grant it less weight, and the balance she strikes will stand so long as the ALJ "minimally articulate[s] [her] reasons—a very deferential standard that we have, in fact, deemed lax." *See Elder v. Astrue*, No. 07-2185, slip op. at 13 (7th Cir. June 16, 2008) (internal punctuation omitted).

The ALJ acted within her discretion when she decided that Dr. Daugherty's and Dr. Gil's opinions only described Carter's condition when she was abusing substances. The ALJ had previously found that both opinions were based on inaccurate information, and one does not need specialized medical knowledge to know that a decision based on inaccurate information may not be

completely reliable. By specifying the limitations on the validity of the experts' opinions, the ALJ made a determination about the relative weight a piece of evidence should receive. Making such a decision about the relative weight of the evidence is not only within the ALJ's discretion, it is precisely what she is called upon to do. It is not this Court's duty to reweigh the evidence. *Cass*, 8 F.3d at 555.

However, the mere fact that the experts who examined Carter were misled as to her drug use does not necessarily imply that their conclusions would be different if they were aware of her drug use, or that she would not be disabled if she was sober. The question whether she is disabled when sober requires a separate inquiry. The ALJ reached her own conclusion on this issue by predicting the cumulative effect of Carter's symptoms without additional medical evidence. However, because there is a medical opinion on the record indicating that Carter is depressed in at least some circumstances, the ALJ must have a basis in medical evidence in order to conclude that Carter would not be depressed under other circumstances. *See Rohan*, 98 F.3d at 970 (finding that the ALJ inappropriately "played doctor" by determining that a claimant was not depressed based on his evaluation of circumstantial evidence when there was a medical opinion stating otherwise). The Court finds that by deciding this question independently, the ALJ inappropriately "played doctor."

Similarly, the ALJ drew an improper inference when she found that Carter could sustain gainful employment at the present time if sober. After discussing Carter's work experiences from 1993-2002, the ALJ found that "[Carter's] rather strong work history prior to 2002, including earnings of over $17,000 during that year ... lead to the reasonable inference that she was capable of sustaining substantial gainful employment during periods of sobriety." (R. at 17.) The ALJ

concluded based on this evidence that Carter would be able to work at the present time if not for drug her abuse. However, this conclusion does not necessarily follow. It is possible that Carter only developed her depression after she stopped working in 2002. Furthermore, even if she had been diagnosed with depression before 2002, it is possible that her depression became more severe in that year or sometime thereafter. In short, the fact that Carter could work in 2002 when she was sober does not mean that she would be able to do so presently, sober or not. Nor does the fact that Carter's depression and drug use appear to have started at about the same time necessarily mean that the substance abuse is the cause of her disability. In other words, coincidence and causation are two distinct concepts.

Ultimately, the question the ALJ must answer is not whether substance abuse caused Carter's disability originally but whether it is material to her disability at the present time. Even if Carter's disability was originally caused in whole or in part by substance abuse, she can receive DIB if she is unable to work at present when sober. The opinion of a trained medical expert is necessary in order to isolate Carter's numerous impairments and determine which impairments would remain in the absence of drug use. For these reasons, the ALJ's conclusion that Carter's substance abuse is material to her disability is an improper medical opinion that is not supported by substantial evidence. Therefore, the case must be remanded and the ALJ must obtain an expert opinion on the question of Carter's ability to work when she is sober.

### III. Conclusion

For the reasons discussed above, Carter's Motion to Reverse the Final Decision of the Commissioner of Social Security is granted. The Court remands this case to the Commissioner for further proceedings consistent with this opinion.

**ENTER ORDER:**

*[signature]*

MARTIN C. ASHMAN
United States Magistrate Judge

Dated: August 19, 2008.